UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BRIAN SHAFIULLAH,

Plaintiff,

- against -

THE METROPOLITAN TRANSPORTATION AUTHORITY; METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT; LONG ISLAND RAIL ROAD COMPANY d/b/a MTA LONG ISLAND RAILROAD; and JOHN DOES #1-10,

Defendants.

---

**MEMORANDUM DECISION AND ORDER**

26-cv-3285 (BMC)

**COGAN**, District Judge.

The issue in this excessive force lawsuit is whether a jury should be permitted to determine whether police officers applied too much force in effectuating plaintiff's arrest for fare evasion. The principal evidence before the Court is a police bodycam video which captures the entire incident. Based on that video, no jury could find that the officers' use of force was unreasonable. It is apparent that plaintiff was trying to obstruct his arrest and make the officers' task of transporting him more difficult by, among other things, going limp and refusing to walk. The officers had to use force to get him moving and used only the force that was necessary to do it. Accordingly, defendants' motion for summary judgment is granted.

## BACKGROUND

The Court converted defendants' motion to dismiss into a motion for summary judgment and, in so doing, waived the Local Rule 56.1 statement requirement. Notwithstanding, none of the facts set forth below can be disputed because they are all captured on bodycam footage.

Plaintiff deboarded the train at Jamaica Station and was immediately approached by police officers from the Metropolitan Transit Authority ("MTA"). They repeatedly asked him whether he had a train ticket, and he repeatedly tried to push past them without producing one. After a roughly 20-second confrontation, one of the officers told him that if he didn't have a ticket, he wasn't free to leave. The officers then handcuffed plaintiff.

Next, the officers started walking plaintiff to the stairs, two of them with their hands grasping the inside of plaintiff's upper arms. After walking for a few seconds, plaintiff leaned back and attempted to plant his foot down. It was at this moment that a third officer stepped in, and the three officers lifted plaintiff's arms (which were still cuffed behind him) high up his back, seemingly using that posture to steer him forward. This got him moving again, so the third officer let go and the other two kept walking plaintiff toward the stairs, now with his arms slightly lower but still higher than waist level. They kept walking with him this way until they reached the stairs.

Once at the top of the stairs, plaintiff planted his feet and leaned backward again, refusing to walk down the stairs. This resulted in his arms being pulled higher up his back. Plaintiff yelled out about his shoulders; in response, the three officers holding him up yelled at him to walk down the stairs. They waited with him in that posture – his body slumped, his arms pinned slightly up his back – for several seconds, repeatedly telling him to walk down the stairs. The officers eventually got him to walk down the steps while he continued to cry out about his shoulders. A few steps down, plaintiff went completely limp, so the officers picked him up by his arms and legs and carried him the rest of the way down. He continued to scream out about his shoulders and his head as they descended (his head was never touched). Once they reached the bottom of the stairs, the officers placed plaintiff back on his feet and told him to walk. The

officers again had his arms pinned up while they pushed him forward, as he was again trying to resist walking.

Once inside the main building (the stairs from the train platform led outside), something happened that resulted in plaintiff falling to the floor. From the sound of feet skidding on the floor and the resulting kerfuffle that the camera did capture, it seems like plaintiff (and maybe a couple of officers) tripped, but the video doesn't show what happened. Once the officers got him up, they escorted him to the holding cells.

Plaintiff now brings claims against the MTA, its police department, and its police officers, as well as the Long Island Rail Road Company, for excessive force under 42 U.S.C § 1983 and common law assault and battery.[1] The amended complaint does not specify which aspects of the arrest constituted excessive force or assault and battery. It says only that the officers "used arm-bar holds, and maneuvers designed to cause excruciating pain, in their apprehension process and transport process." Based on plaintiff's opposition to defendants' motion for summary judgment, his claims appear to be focused on the walk across the platform and down the stairs.

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144,

[1] Plaintiff voluntarily withdrew a host of other claims at the Initial Status Conference.

158-59 (1970)). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## II. Analysis

"[T]o establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, [plaintiff] must establish that the government interests at stake were outweighed by 'the nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests.'" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "[T]he factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." Id. (citing Graham, 490 U.S. at 397). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham, 490 U.S. at 396).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (quoting Graham, 490 U.S. at 397). However, "[g]iven the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty Am., 361 F.3d at 123 (citing O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003)).

Here, the precipitating crime – theft of services – is not severe by any measure. Indeed, it is a misdemeanor that many New Yorkers commit every day, and for which they are generally lucky enough to evade arrest. But the force that plaintiff alleges was excessive was not that which was used to initiate his arrest; rather, what plaintiff deems excessive was the force that the officers used thereafter to transport him to and down the stairs. It is apparent from the bodycam footage that the officers started using force at this point only because plaintiff was impeding his arrest by refusing to walk and becoming dead weight. Nothing requires officers to wait it out until an arrestee decides that he's ready to be arrested.

Clearly, some measure of force had to be used. The question, then, is whether the force that the officers ultimately used was greater than necessary to effectuate the arrest. The Court has no doubt that it was uncomfortable, even painful for plaintiff to have his arms chicken-winged up his back. But was it excessive? No. Plaintiff would not otherwise walk. Once they arrived at the stairs, plaintiff made the posture more painful for himself by leaning back and going limp. The officers had no choice other than to carry him down. Plaintiff is a very large man. If he had gone limp again at an unexpected time, they all could have taken a tumble and gotten severely injured.

Contrary to plaintiff's assertion, no reasonable person could watch the bodycam video and conclude that officers "dragged, kicked, punched, and threw his shoulder out." There is no dragging, kicking, or punching, and if plaintiff threw his shoulder out, it's because he went limp while officers attempted to keep him upright.[2]

---

[2] Although the absence of significant injuries is not dispositive, Jones v. Treubig, 963 F.3d 214, 239 (2d Cir. 2020), and recognizing that there is no evidence before the Court as to plaintiff's injuries, it is certainly probative that after the ordeal, EMTs had to wait nearly 20 minutes for plaintiff to leave with them. (There is video footage of this as well.) In fact, while the EMTs waited, plaintiff ranted at the officers, gestured with his arms and rifled through his bag, and picked at his toes.

Accordingly, the Court grants summary judgment to defendants on the excessive force claim. Because “the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical,” the Court also grants summary judgment to defendants on the assault and battery claim. See Kennedy v. Arias, No. 12-cv-4166, 2017 WL 2895901, at *12 (S.D.N.Y. July 5, 2017) (citations omitted).

**CONCLUSION**

Plaintiff wants the Court to believe – or at least let a jury decide – that officers “dragged, kicked, punched, and threw his shoulder out.” The Court cannot rely “on such visible fiction” when there is video evidence that definitively refutes it. See Scott v. Harris, 550 U.S. 372, 380-81 (2007). Defendants’ motion for summary judgment is granted. This case is dismissed.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
August 24, 2026